Bernard J. Rosen/S.B. No. 41538
Beverly Hills Law Building
424 S. Beverly Drive
Beverly Hills, CA 90212
Tel: (310) 203-9600
Fax: (310) 203-9696
e-mail: bernardrosenlaw@aol.com

Attorney for Defendant
GISELLE CASADO

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>GISELLE CASADO<br><br>    Defendant. | No. CR 13-537-BRO-27<br><br>**Motion of Defendant Giselle Casado to Suppress Evidence Seized At Her Residences Pursuant to Two Search Warrants; Memorandum of Points and Authorities in Support Thereof.**<br><br>Date: March 26, 2015<br>Time: 9:30 a.m.<br>Court: 14 |

To: THE CLERK OF THE ABOVE-ENTITLED COURT AND THE UNITED STATES OF AMERICA AND ITS ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that on the 26th day of March, 2015, at 9:30 a.m., in the courtroom of the Honorable Beverly Reid O'Connell, United States District Judge, defendant Giselle Casado will move the Court for an Order suppressing all evidence seized from her residences pursuant to search warrants executed on July 1, 2010 (search no. 1), and July 6, 2010 (search no. 2), on the ground that said warrants were issued in violation of the Fourth Amendment to the United States Constitution in that the first

warrant was not issued upon probable cause and the second warrant was issued only upon evidence illegally seized pursuant to the purported authority of the first.

The motion will be based on the records and files of this case, the warrants, together with the supporting affidavits submitted in support of their issuance, attached hereto as exhibits A[1] and B, respectively, the attached Memorandum of Points and Authorities, and such further argument and evidence as may be offered at the hearing of this motion.

Dated: January 28, 2015　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　s// Bernard J. Rosen
　　　　　　　　　　　　　　　　BERNARD J. ROSEN
　　　　　　　　　　　　　　　　Attorney for Defendant
　　　　　　　　　　　　　　　　GISELLE CASADO

---

[1] Being searches of residences, pursuant to Court rules the actual addresses will be redacted from the ECF filed documents, including this Memorandum, except that the copy lodged with the Court as the Mandatory Chambers' copy will be unredacted.

## TABLE OF CONTENTS

Declaration of defendant Giselle Casado .   .   .   .   .   4

Memorandum Of Points and Authorities   .   .   .   .   5

   I.   Introduction   .   .   .   .   .   .   .   5

   II.   Search Warrant no. 1   .   .   .   .   .   .   6

       Search Warrant no. 2   .   .   .   .   .   .   9

       Conclusion .   .   .   .   .   .   .   .   10

Exhibits   .   .   .   .   .   .   .   .   .   .   .

   A   Search Warrant no. 1   .   .   .   .   .   .   .

   B   Search Warrant no. 2   .   .   .   .   .   .   .

DECLARATION OF GISELLE CASADO

I, Giselle Casado, declare as follows:

1. In July of 2010 I was residing at xxxx Pivot Street, Downey, California. By that time I had been living there for several months.

2. Previously, I had resided at my grandmother's house at xxxx Darwell Avenue, Bell Gardens, California.

3. Although I had not lived at my grandmother's house in some time, in 2010 I still sometimes used her address as my mailing address and I received mail addressed to me at that address. I had also continued to use that address as my residence address with the California Department of Motor Vehicles.

I declare under penalty of perjury that all of the above is true.

Executed this 27th day of January, 2015, at Downey, California.

/s/ Giselle Casado[2]
GISELLE CASADO

---

[2] A declaration with an original signature and unredacted addresses will be filed with the Court's Mandatory Chambers' copy.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## Introduction

On July 1, 2010, defendant Giselle Casado's then current residence at xxxx Pivot Street, Downey, California was entered and searched (search no. 1) pursuant to a search warrant issued by a California state magistrate. A few days later, on July 6th, and based on evidence seized during this first search, defendant Casado's grandmother's residence, at xxxx Darwell Avenue, Bell Gardens, California – a residence at which defendant Casado had previously lived, a residence at which defendant Casado received mail, and a residence which was still, at the time, listed as her residence with the California Department of Motor Vehicles (see the defendant's attached declaration) – was also entered and searched (search no. 2) pursuant to another search warrant issued by the same California state magistrate.[3]

For the reasons argued below, the first search warrant was issued without a showing of probable cause and, thus, the search, and subsequent seizure of evidence, was made in violation of the Fourth Amendment. The second search warrant, as indicated, was obtained as a result of evidence found and seized during the search supposedly authorized by the first warrant. That search and seizure, obviously, were the illegal 'fruits' of the first. The evidence seized in both searches must, therefore, be suppressed.

//

---

[3] The warrants and affidavits were provided as discovery by the government. The face page of the second warrant (exhibit B) is missing, but that it was authorized by the same magistrate as was the first warrant is reflected in other of the discovery.

## II.

## Search Warrant no. 1

The first search warrant was issued on June 30, 2010, and was executed the next day, July 1st. It was issued upon the affidavit of detective Roberto Figueroa (Ex. A, at L001573[4]), a Deputy Sheriff of Los Angeles County and a member of a Federal Joint Task Force. (*Id.*, at L001576.)

Such affidavits are, of course, to be read in a commonsense, not a hypertechnical, manner. (*Illinois v. Gates*, 462 U.S. 213, 236 [1983].) So read, it appears that based on an order authorizing the interception of wire communications issued by United States District Judge David O. Carter (Ex. A, at L001576), law enforcement had reason to believe that Marcos Lopez (co-defendant number 3 in this case) was engaging in illegal communication with inmates in prison believed to be members of the Mexican Mafia (*id.*, at L001576-1577) and was engaging, also, in illegal drug trafficking. (*Id.*, at L001577-1578.) The affidavit sought, therefore, authorization to search for items of evidence that might prove such conduct. (*Id.*, at L001571-1572.) So far, so good, perhaps.

The problem is, it is submitted, that the affiant sought authorization to search, and the magistrate issued her authorization to search, the residence at xxxx Pivot Street, Downey, California. (*Id.*, at L001570.) What, however, was the "probable cause" to believe that any of the "things to be seized" (United States Constitution, Amendment IV) were going to be found there?

According to the affidavit the detective "has knowledge that Lopez is currently residing with his girlfriend, Giselle Casado." (Ex. A, at

---

[4] Page cites are to the bates numbers provided by the government with discovery.

L001578." How did he "know" that? Indeed, how did he "know" that Lopez and Giselle Casado were boyfriend and girlfriend, or even knew one another? The affidavit is silent on those subjects.

The affidavit then went on to describe how, from "Department resources," it was learned that Ms. Casado resided at xxxx Pivot Street, Downey, California and that on one occasion, a few weeks before, the detective had driven by that address and had seen a vehicle registered in Ms. Casado's name to be parked in the driveway. (*Ibid*.) Now, however, the detective was averring his "belie[f] that Lopez is the primary driver of the [vehicle] and … is currently residing at th[at] address …." (*Ibid*.) Why the detective believed that Lopez was "the primary driver" of the vehicle and why he believed that he was now "currently residing at the address" are other subjects about which the affidavit is silent.

It is **black-letter law**, of course, that the "[c]onclusions of [an] affiant unsupported by underlying facts cannot be used to establish probable cause." (*United States v. Underwood,* 725 F.3d 1076, 1081 [9th Cir.].) Though *Underwood*, itself, was decided in 2013, the Ninth Circuit was not announcing some new concept that law enforcement officers, or even magistrates, might not have been familiar with, or expected, in 2010, when these warrants were obtained. Amongst other citations of authority for that statement, the Ninth Circuit's opinion in *Underwood* quoted the Supreme Court as observing: "The Commissioner must judge for himself the persuasiveness *of the facts* relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion that the person whose arrest is sought has committed a crime." (*Ibid.*; emphasis partially added.) The Supreme Court case being quoted? That was *Giordenello v. United States*, 357 U.S. 480, 486. The year it was decided? – **1958!**

It should come as no surprise, it is submitted, that the Ninth Circuit held, in *Underwood*, that not only is a warrant issued upon an affidavit containing mostly conclusory allegations "defective under the Fourth Amendment" (725 F.3d *supra*, at 1084), but that such a 'bare bones' affidavit, that is, one "so lacking in indicia of probable cause," would not support a claim of 'good faith reliance' by an officer, either. (725 F.3d *supra*, at 1085-1986.) Here, of course, as noted above, the magistrate was provided nothing but the affiant's conclusions concerning the place to be searched.

Should further authority be needed to support the conclusion that the first search warrant in this case was similarly "defective under the Fourth Amendment," it would come from a somewhat surprising source, cases involving a class of persons who have expressly waived their rights to be protected by the Fourth Amendment or, at least, whose expectations of the privacy provided by it are greatly reduced – those on probation or parole! In *United States v. Grandberry*, 730 F.3d 968 (9th Cir. 2013), the Ninth Circuit reiterated it's rule that even as to a parolee who has accepted parole under the express condition that his "residence and any property under [his] control may be searched without a warrant" (*id.*, at 971), "'[b]efore conducting a warrantless search' of a residence '**pursuant to a parolee's parole condition, law enforcement must have probable cause to believe that the parolee is a resident of the house to be searched.**" (*Id.*, at 973; emphasis in original, internal citation omitted.)

Whatever else may be said about Marcos Lopez, or defendant Casado, for that matter, there being no allegation that either of them was on parole or probation there is no basis for concluding that either had any lesser expectation of privacy, as guaranteed by the Fourth Amendment, than any other person. No factual basis being provided the magistrate for

her to conclude that there was probable cause to believe that either Lopez or defendant Casado was residing at xxxx Pivot Street, Downey, California, the warrant was "defective under the Fourth Amendment" (*United States v. Underwood,* 725 F3d *supra,* at 1084) and all evidence seized during the search it purportedly authorized must be suppressed.

<u>Search Warrant no. 2</u>

The second search warrant was executed on July 6, 2010. Although this warrant authorized the search of two residences, defendant Casado is only seeking to suppress the evidence seized as a result of the search authorized of xxxx Darwell, Bell Gardens, California, her grandmother's residence, a place where she herself once resided, and a place where she did on occasion receive mail. (Declaration of Giselle Casado.)

It appears that the only "facts" provided the magistrate to justify the request to search this residence was that during the first search, that is, the search authorized by search warrant no. 1, of xxxx Pivot Avenue, Downey, California, mail was seized which was addressed to Ms. Casado, but at the Darwell Avenue address (Ex. B, at L002803), and that the affiant had determined that the California Department of Motor Vehicles showed her residence to be the Darwell address.[5] (*Id.,* at L002804.)

As argued, above, of course, the warrant authorizing that first search was clearly "defective under the Fourth Amendment" and, thus, the evidence seized thereunder must be suppressed. For purposes of the second warrant, this information is considered "tainted." Of course, "[a] search warrant isn't rendered invalid merely because some of the evidence included in the affidavit is tainted. … The warrant remains valid if, after excising the tainted evidence, the affidavit's 'remaining untainted

---

[5] This "fact," by the way, appears to have been conveniently omitted from the affidavit offered in support of search warrant no. 1. (See, ex. A, at L001578.)

evidence would provide a neutral magistrate with probable cause to issue a warrant." (*United States v. Nora*, 765 F.3d 1049, 1058 [9th Cir. 2014].)

If, thus, the "fact" that mail addressed to Ms. Casado at the Darwell Avenue address was seized at the Pivot Street residence is "excised" from the second affidavit, the magistrate is left with the sole "fact" that the California DMV shows that Ms. Casado is, or, at least, one time was, residing at the Darwell Avenue address. This hardly provides probable cause to search that residence. Nor, it is submitted, could law enforcement reasonably and "in good faith" rely on it to justify a search. (*United States v. Underwood*, 725 F.3d *supra*, at 1085-1986.)

## CONCLUSION

For all of the reasons argued above, the Court should grant this motion to suppress all of the evidence seized pursuant to the purported authority of both of the search warrants challenged here. It should also preclude the government from using any other evidence that was obtained, if any,

Respectfully submitted,

s// Bernard J. Rosen
BERNARD J. ROSEN
Attorney for Defendant
GISELLE CASADO