STEPHANIE YONEKURA
Acting United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
TERRENCE P. MANN (Cal. Bar No. 211377)
Assistant United States Attorney
     8000 United States Courthouse
     411 West 4th Street
     Santa Ana, California 92701
     Telephone: (714) 338-3536
     Facsimile: (714) 338-3708
     E-mail: terrence.mann@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>LEONEL LAREDO, et al.,<br>　　#1) Leonel Laredo,<br><br>　　　　Defendants. | CR No. 13-537-BRO-1<br><br>GOVERNMENT'S OPPOSITION TO *EX PARTE* APPLICATION FOR ORDER THAT LEONEL LAREDO RECEIVE CERTAIN ITEMS WHILE HOUSED AT THE SAN BERNARDINO DETENTION CENTER AS A FEDERAL INMATE |

　　　Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby respectfully submits its opposition to the ex parte application filed by defendant LEONEL LAREDO (#1) requesting that he – and, in some instances, all other federal inmates – receive certain items while being housed at the San Bernardino County Jail, Central Detention Center.  (Docket No. 688.)

　　　The opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and any such

further evidence or argument as the Court may permit at any hearing in this matter.

Dated: June 25, 2015          Respectfully submitted,

STEPHANIE YONEKURA
Acting United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

           /S/
_____
TERRENCE P. MANN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

LEONEL LAREDO ("LAREDO") is the lead defendant in this 45-count, 31-defendant RICO case. As the Court is well aware, the indictment charges members and associates of the Florencia-13 criminal street gang with violations ranging from RICO Conspiracy under 18 U.S.C. § 1962(d), to Violent Crimes in Aid of Racketeering (culminating in a homicide), to various drug, firearm, and fraud offenses. LAREDO is permanently detained pending trial. In or around July 2014, he was transferred to the San Bernardino County Jail ("SBCJ"), at which he is currently housed in the Central Detention Center. LAREDO has now filed an ex parte application demanding that he be provided certain personal items. (Docket No. 688.) For some of the referenced items, he also requests that they be provided to "all federal inmates being held pre-trial" at the facility. (Id. at 1.) Because LAREDO's requests are often not factual and otherwise implicate security concerns, the government opposes this application.

As a preliminary matter, since a district court normally only has jurisdiction over parties to cases actually before it (and no class has been established in any civil action here), the government does not believe that the Court intends to rule on the conditions of housing for "all federal inmates," as LAREDO seeks. If that is incorrect and the Court is entertaining a broad order impacting SBCJ, the government would respectfully request that the San Bernardino Office of County Counsel be given an opportunity to make a submission to the Court before any such order is issued.

With respect to LAREDO's own conditions of confinement, government counsel has spoken with both SBCJ personnel and Federal Bureau of Prisons ("BOP") counsel for the Metropolitan Detention

1  Center in Los Angeles, California ("MDC-LA"), which conversations
2  largely undercut LAREDO's claims, as follows.
3       First, LAREDO requests "orthotic shoes" and claims that he was
4  "told by [SBCJ] staff that he cannot obtain them without a court
5  order." (Docket No. 688 at 4.)  The Administrative Sergeant for the
6  Central Detention Center, who is the supervisor responsible for rules
7  and regulations governing inmates and related inmate grievances,
8  advised that court orders are not required for medically-required
9  footwear.  Rather, the inmate must make a request to see the medical
10 staff, which after an in-person consultation can provide written
11 authorization for the inmate to purchase special shoes at the
12 commissary.  If the authorized shoes are insufficient, the inmate may
13 again petition the medical staff, which will provide whatever
14 footwear is appropriate on a case-by-case basis.  Contrary to
15 LAREDO's claims, family members are not allowed to provide shoes
16 because of the risk of weapons or other contraband being hidden
17 within them.  The Administrative Sergeant also obtained LAREDO's SBCJ
18 file, and it reflected that he was seen by medical staff on or about
19 July 18, 2014.  At that time, he received authorization for special
20 shoes and obtained a pair from the commissary.  His file indicated
21 that LAREDO has not sought any further medical staff visits regarding
22 a foot problem, as required by established SBCJ procedures.
23      Second, LAREDO claims that he and other federal inmates are
24 "constantly cold" and should be provided jackets or other cold
25 weather gear just like received by inmates at MDC-LA.  (Docket No.
26 688 at 4.)  BOP counsel advised that jackets are not authorized for
27 inmates at MDC-LA during warm weather months, including the present
28 season, and that sweatshirts and similar outerwear are prohibited.

2

As for SBCJ, the Administrative Sergeant explained that jackets are not provided to inmates for security reasons – namely, that weapons, among other contraband, can be easily hidden in outerwear.  If an SBCJ inmate has a problem with the temperature, he is free to make a formal request.  LAREDO's file, however, included no record of him ever making such a request.[1]

Third, LAREDO claims that "[i]nmates at MDC are allowed ink-pen fillers," and he requests that all federal inmates at SBCJ be allowed to have such "pen fillers."  (Docket No. 688 at 4.)  BOP counsel advised that MDC-LA inmates are allowed to purchase disposable pens at the commissary, but not replaceable "fillers."  The Administrative Sergeant noted that SBCJ does not sell fillers due to problems with inmates using them to create tattoos, especially gang tattoos.  Likewise, miniature pencils are provided at SBCJ out of concerns that full-sized pencils (and presumably pens, for that matter) could be used as weapons.

Fourth, LAREDO claims that, while MDC-LA inmates are "allowed 3 sets of clothes at any one time[,] . . . inmates at SBCDC are only allowed one set of clothes," requiring him to "strip naked and hand the soiled clothes to the staff while he waits naked in front of them to be handed a clean set."  (Docket No. 688 at 4-5.)  The Administrative Sergeant responded that LAREDO's allegations were incorrect.  It is true that MDC-LA inmates are allowed at least three sets of clothing (per BOP counsel) and that SBCJ inmates are issued a single set; however, at no time are inmates at the Central Detention

---

[1] The government also notes that, on the date of this filing, Google indicated that the temperature in San Bernardino was 100 degrees Fahrenheit.

3

1  Center where LAREDO is housed required to take off all their clothes
2  while waiting for a clean set.  To the contrary, the Administrative
3  Sergeant explained that, multiple times each week, inmates on
4  LAREDO's "tier" are allowed to walk out of their cells and down the
5  tier to see a jail employee, who will exchange either "whites" (i.e.,
6  undershirt, underwear, and socks) or their orange jumpsuits for clean
7  clothes.  The inmates should not be naked because they can wear
8  whichever part of the clothing set (whites or jumpsuits) that is not
9  being exchanged.  The Administrative Sergeant also noted that
10 multiple sets of clothes are not provided based on concerns that
11 extra clothing items could be cut up and used to create rope or other
12 contraband.
13     Fifth, LAREDO claims that he is not presently allowed to use
14 headphones to listen to audio files provided in discovery, which
15 means that "the discovery [can] be overheard by inmates and staff who
16 are in the discovery area and immediate vicinity."  (Docket No. 688
17 at 5.)  Although BOP counsel confirmed that inmates at MDC-LA can
18 purchase headphones at the commissary for this purpose, the
19 Administrative Sergeant rejected this characterization of SBCJ
20 facilities.  The Administrative Sergeant explained that, at the
21 Central Detention Center, LAREDO is allowed to review discovery
22 behind closed doors in a secure room.  The Administrative Sergeant
23 represented that she has stood outside that room when an inmate is
24 inside and was not able to hear anything and that this same room, in
25 fact, is used by jail staff to interview inmates.
26     Sixth, LAREDO claims that he has been provided a Norelco-style
27 electric razor that must be "handed off from one inmate to the next"
28 causing the unsanitary result of "blood from nicks [being] exchanged

4

between inmates." (Docket No. 688 at 5-6.)  The Administrative Sergeant advised that SBCJ inmates can obtain disposable razors at the commissary, but electric razors are allowed only for those who obtain permission from the medical staff.  Upon obtaining permission, on a designated day each week, jail staff provide an electric razor to inmates – one by one – and each razor is fully cleaned using chemicals between each use.  LAREDO's file did not include any record that he requested use of an electric razor.  Moreover, if LAREDO is presently sharing an electric razor with other SBCJ inmates, it is unauthorized for the same reasons that the application identifies, as well as security concerns of unapproved inmates being given access to razor blades.  As for MDC-LA, BOP counsel explained that:
(a) disposable razors can be purchased from the commissary and
(b) electric razors are loaned out once a week to designated inmate barbers, who then give haircuts to inmates in an open, public area.

In sum, based on the application's demonstrable lack of merit, the government respectfully requests that the Court deny it in its entirety.  Should LAREDO believe that government counsel has misunderstood any of the above facts attributed to SBCJ personnel, government counsel is willing to act as an intermediary to attempt to informally resolve any ongoing, material issues relating to LAREDO's conditions of confinement.  The government will also provide additional information to the Court upon request.